Submitted on briefs at Pendleton October 28, affirmed December 23, 1920, rehearing denied February 1, 1921.

## KELLER v. JOHNSON.

(194 Pac. 185.)

**Evidence—Inference cannot be Founded upon Inference.**

1. An inference cannot be founded upon an inference.

**Evidence—Evidence Held to Raise Presumption That Sheep Herder With Whom Conversation was had was Owner or Owner's Employee.**

2. In an action for damages to plaintiff's grass by the grazing of sheep, evidence that the sheep numbered 1,500 or 2,000, and were worth $15,000 or $20,000 and that they were in charge of a herder who had been seen at defendant's camp, *held* to raise the presumption that property of such value would *either* be *in the actual possession* of the owner or someone who is employed by him, and the person in charge with whom a conversation was had was either the owner or his employee.

**Evidence—Evidence as to Conversation With Herder of Sheep Held Competent in Action for Damages by Grazing.**

3. In an action for damages to plaintiff's grass caused by the grazing of defendant's sheep, evidence of a conversation with the herder who had charge of the sheep *held* competent.

Animals—Evidence Held to Show That Trespassing Sheep Belonged to Defendant.

4. In an action for damage to grass by grazing of sheep, evidence *held* sufficient to show that the sheep belonged to defendant.

Appeal and Error—Evidence as to Market Value, if Error Because Witness was not Qualified, Held Harmless.

5. In an action for damages to plaintiff's grass by the grazing of defendant's sheep, evidence by plaintiff as to the market value of the grass and as to the rental value of the land, if erroneous on the ground that plaintiff was not qualified, *held* harmless.

From Umatilla: GILBERT W. PHELPS, Judge.

In Banc.

About August 21, 1915, the plaintiff made a homestead filing upon 360 acres in Umatilla County, more or less rocky, and known as range land, of which he has been in possession ever since, and for which he made his final proof in 1919. It was inclosed by a three-wire fence, and the plaintiff claims that a large portion of it was covered with bunch grass, which he was reserving as feed for his own stock. The defendant is a large sheep owner, and for range purposes had lands adjoining those of the plaintiff upon which he maintained one of his sheep camps.

It is alleged that on the respective dates of September 30 and October 11, 1919, the defendant carelessly, negligently, and unlawfully herded and drove a band of sheep upon plaintiff's lands; that they did eat and destroy his bunch grass, by reason of which he was damaged, and for which he seeks recovery.

For answer the defendant admits plaintiff's homestead filing, and that upon the respective dates he was the owner and in possession of a certain band of sheep which was kept by and in charge of his herder, and denies all other material allegations. During the trial, and over the objections of the defendant, the court permitted the plaintiff and other witnesses to testify as

to certain conversations with the herder.    When plaintiff rested, the defendant filed a motion for nonsuit, which was overruled.    At the conclusion of all the evidence the defendant filed a motion for directed verdict, which was denied.    The jury returned a verdict for the plaintiff, upon which judgment was entered, from which the defendant appeals, assigning as error the admission of the testimony of the plaintiff as to the value of the grass, and the above rulings of the court.    AFFIRMED.    REHEARING DENIED.

For appellant there was a brief submitted over the name of *Messrs. Peterson, Bishop & Clark.*

For respondent there was a brief prepared and submitted over the names of *Mr. I. M. Schannep* and *Messrs. Keator & Randall.*

JOHNS, J.—Although the amount involved is small, the legal principle is important.    It appears that on the evening of September 30, 1919, the plaintiff and his two brothers found a band of about 1,500 or 2,000 sheep, in charge of a herder, on about 40 acres of his land, upon which there was good bunch grass.    Over the objections of the defendant the plaintiff was permitted to testify:

"I asked this herder what he was doing on the land, and he says, 'Isn't this Johnson's grass?' and I says, 'You know better than that; there is the fence there.' And he says, 'I am a new man here, and they didn't show me any lines in here,' and I says, 'There is the fence, and you could see the lines.' "

In its ruling the court said:

"It is immaterial what the herder said, but unless there is evidence that this herder was acting for Mr. Johnson you couldn't possibly bind him unless you

could connect that up and show he was representing Johnson."

The testimony was admitted upon the statement of counsel that, "We will connect that up."

In substance, the same ruling was made as to the alleged trespass by another herder on October 11th, on about 160 acres. The testimony is conclusive as to the damage done by the sheep. In *Jones Land & Livestock Co.* v. *Seawell,* 90 Or. 236 (176 Pac. 186), this court held:

"In view of Section 799, subsection 11, L. O. L., stating the presumption that things in the possession of a person are owned by him, declarations of a sheep herder in possession of sheep that defendant was the true owner are admissible in an action for trespass by the sheep."

That was a similar case, in which Roller was permitted to testify that Elliott, the herder, "at the time the sheep was driven upon plaintiff's land," stated "that he was working for Seawell, and that the sheep belonged to Seawell." The ruling of the lower court was sustained, and in construing that section this court says:

"As a logical sequence of this presumption, it has been held that the declarations of a person in possession of property, in regard to the true ownership, are competent evidence."

In the Seawell case the defendant testified:

"That Elliott was working for him during the month of June, and had charge of sheep in that vicinity."

There is no admission here by the defendant that either of the herders was ever in his employ, and there is no direct testimony on that point. There is evidence tending to show that the defendant was a prominent sheepman, and that he had and maintained a

sheep camp on his own land within about a quarter of a mile of plaintiff's land; that the herders who were with the sheep at the time of the alleged trespass were seen around the Johnson camp, preparing their evening meal; also that they were herding sheep on Johnson's own land; and the proof is conclusive that when the sheep were driven off of plaintiff's land they were driven to and upon Johnson's land. The plaintiff testified:

"Q. Did you ever see either of these herders in or about that sheep camp?

"A. I did. I saw them there most every evening when I was going across.

"The Court: Whose sheep camp?

"A. Johnson's.

"Q. By Johnson you mean the defendant Charles Johnson?

"A. Yes, sir; it was Charles Johnson's sheep camp.

"Q. What were they doing when you saw them there?

"A. I suppose he was getting his supper in the evening. His sheep were running around there.

"Q. What was the herder doing when you saw him there?

"A. He was around the camp building a fire.

"Q. Around Charles Johnson's sheep camp?

"A. Yes, sir.

"Q. You saw him there more than once?

"A. I saw him there different times when I was riding through."

As to the conversation with the herder at the time of the first trespass, Warren Keller, a brother of plaintiff testified:

"A. He said, 'Isn't this Johnson's land?' and Ray told him, 'No; can't you see that fence?' He said, 'That is the line, and I want you to stay out of here'; and he says, 'I supposed it was Johnson's land.'"

Warren Keller further testified:

"Did you see him after that day?

"A. I saw him at Johnson's sheep camp.

"Q. What was he doing there?

"A. Carrying water at one time at the spring and at another time he was building a fire at the camp.

"Q. That is the same man who was in charge of the sheep?

"A. Yes, sir; and at another time he was standing in front of the cabin looking at us fellows when we went by.

"Q. That camp was Charles Johnson's camp, the defendant in this action?

"A. Yes, sir.

"Q. That is the camp where you saw this herder?

"A. Yes, sir."

Grover Keller testified:

"Q. Did you see him after that time?

"A. I saw him at his camp.

"Q. Whose camp was that?

"A. Johnson's.

"Q. How long after this did you see him at Johnson's?

"A. It was the next evening."

As to the talk with the herder during the second trespass, Michaels testified:

"A. Roy asked him who he was herding for, and he said, 'I am herding for Charlie Johnson,' and Roy said, 'Where have you got your sheep at?' And he said, 'I don't know where I have them at; he sent me out here, and didn't show me the lines; he was to be out early that morning, and didn't come.' "

Michaels further testified:

"Q. Which direction did you drive them?

"A. Towards Johnson's sheep camp.

"Q. How far did you drive them?

"A. We drove them about a quarter of a mile off of Keller's place, or a little over a quarter, off the edge of his field, into Johnson's field."

Osborn testified:

"A. He said they were Charlie Johnson's sheep, and Charlie Johnson was supposed to have a man up there the day before to show him the line.

"Q. What became of the sheep?

"A. After a little while they drove them off toward Johnson's camp.

"Q. Did they drive them across their land on to Johnson's land?

"A. Yes, sir; they drove them through the fence on to Johnson's land.

"Q. About how far?

"A. About a quarter of a mile right straight up the ridge. * *

"A. He said they were Charlie Johnson's sheep.

"Q. Of your own knowledge you don't know anything about whose sheep they were?

"A. They must have been Johnson's, because they were camped at his camp there."

1. The testimony as to what the herders said, standing alone, would not be sufficient proof of ownership, and it is true, as appellant contends, that there is no admission or direct testimony that the herders were in the employ of Johnson, and that an inference cannot be founded upon an inference. R. C. L., Volume 10, Section 166, says:

"Declarations as to the ownership of property, made by a person in possession thereof, are admissible in evidence upon an issue as to such ownership as part of the *res gestae*. This includes all declarations explaining and characterizing the possession, and showing in what capacity the declarant holds, whether as owner solely or jointly, or as the agent, tenant, or trustee of another, and the like, and when the possession or ownership of the property is under inquiry, such declarations are received as explanatory of the possession. Declarations by a party in possession of personal property as to ownership thereof,

accompanying some principal fact which they serve to explain and qualify, are sometimes said to be a part of the *res gestae,* and with the proper limitations and restrictions may, in certain cases, be permitted to go in evidence''—citing numerous authorities.

2–4. That rule should apply with special force to a band of sheep in charge of a herder. Here the statements were made by the person who had actual charge of the sheep, and were made at the time of the trespass. This kind of a case is somewhat *sui generis.* From necessity, a band of sheep is placed in charge of a herder, and for weeks at a time is never seen by the owner. During certain seasons of the year the sheep are kept on what is known as mountain range, a sheep camp being maintained close at hand as the base of supplies and for the use of the herder. Outside of general instructions, it is not possible for the owner to know just where his sheep are or what his herder does. As to the sheep, under such conditions, the herder acts for and represents his owner. At the time alleged, a band of 1,500 or 2,000 head of sheep was worth $15,000 or $20,000. There is at least a presumption that property of that value would either be in the actual possession of the owner, or someone who was employed by the owner, and that a person who was in charge and had control of the sheep, and who was seen at the camp at different times, was either the owner or in the employ of the owner. We have no right to assume that the herder's possession was unlawful. This is not a case of an inference founded upon an inference. Here there are positive facts. The defendant was a large sheep owner and his range lands adjoined those of the plaintiff. The herders in charge said the sheep were Johnson's, and they were driven by them

from the plaintiff's lands to and upon those of the defendant. The testimony is conclusive that Johnson maintained a sheep camp about a quarter of a mile from plaintiff's land; that at different times thereafter the herder who was in charge of the sheep at the time of the trespass was seen in and around that camp carrying water, building a fire, and preparing his meal, and that he was there engaged in herding a band of sheep on the defendant's land. Such matters are not inferences. They are positive and direct facts. Although the defendant made a general denial and offered evidence tending to show that he did not have a band of sheep there at the particular time alleged, in effect he admits that a few days later he did have sheep at that camp in charge of a herder, and that he was the owner of the camp and of the adjoining lands. Here the question is whether, from the actual proven facts, the jury had a legal right to infer that Johnson was the owner of the sheep, and that the herder was in his employ. All things considered, the testimony was competent. The jury found for the plaintiff, and there was sufficient evidence to sustain the verdict.

5. Objection is made that the plaintiff was not qualified to testify as to the market value of the grass, and that he was permitted to give evidence as to the rental value of the land. From the amount of the verdict it is apparent that it was not found upon his testimony, and there was other competent evidence to sustain the amount which the jury did find. Although it should be established, as any other fact, it is also true that the average jury of Umatilla County would know as much about the market value of bunch grass in that county as anyone called as a

witness.   Assuming that such ruling was error, it was not prejudicial.

Judgment affirmed.

AFFIRMED.   REHEARING DENIED.

HARRIS, J., concurs in result.