Argued March 16, affirmed May 11, 1960

# EITEL *v.* TIMES, INC.

352 P. 2d 485

*J. B. Bedingfield, Sr.,* argued the cause for appellant. On the briefs were Bedingfield, Grant & Bedingfield, Coos Bay.

*Philip A. Levin,* Portland, argued the cause for respondent. With him on the brief were Peterson, Pozzi & Lent, Portland.

Before McAllister, Chief Justice, and Sloan, O'Connell and Harris, Justices.

O'CONNELL, J.

The plaintiff brings this action to recover damages for personal injuries resulting from the alleged negligence of the defendant. Plaintiff alleges that at about 8:55 p. m., January 7, 1956, she tripped on a wire on the sidewalk in front of the bus terminal operated by Gorst & King, a corporation, in North Bend, Oregon. Plaintiff contends that the wire had been taken from a bundle of newspapers deposited by the defendant on the sidewalk near the scene of the accident and as a result of defendant's negligent conduct in causing the wire to be left on the sidewalk the plaintiff was injured.

At the close of plaintiff's case in chief the de-

fendant moved for an involuntary nonsuit which was denied, whereupon the defendant rested. Defendant requested the court to give the following instruction, which request was refused.

"I instruct you that there is no evidence in this case that there was any negligence upon the part of defendant in this case which proximately caused any injury to plaintiff. Therefore, I instruct you that it is your duty to return a verdict in favor of the defendant and against the plaintiff."

Defendant excepted to the court's refusal to give the instruction. The jury returned a verdict for the plaintiff in the sum of $12,000 general damages and $8,345.75 special damages. On appeal defendant assigns as error the lower court's refusal to instruct the jury as requested. The requested instruction was tantamount to a motion for a directed verdict and the refusal to give it was a sufficient basis for an assignment of error. *Inwall v. Transpacific Lumber Co.,* 165 Or 560, 108 P2d 522 (1941); *Carty v. McMenamin & Ward,* 108 Or 489, 216 P 228 (1923); *Dayton v. Fenno,* 99 Or 137, 195 P 154 (1921); *Treadgold v. Willard,* 81 Or 658, 160 P 803 (1916); *Merrill v. Missouri Bridge Co.,* 69 Or 585, 140 P 439 (1914). We must decide, therefore, whether there was sufficient evidence to support the verdict.

The defendant publishes a newspaper at Coos Bay, Oregon. Some of the papers are sold in North Bend. Papers which were to be sold on the streets in North Bend were delivered by defendant to the newsboys by depositing the papers in bundles on the public sidewalk at various selected points in the city. The bundles were bound with wire which, when removed, was in the form of a loop. One of these delivery points was in the vicinity of the bus terminal in front of

which plaintiff fell. For a period of six months prior to the accident the regular delivery point was on the sidewalk in front of a floral shop approximately sixty feet north of the bus terminal. Delivery was usually made every day except Sunday, at times varying from two o'clock to four o'clock in the afternoon. On some Saturdays the newsboys would pick up their papers at the defendant's plant, in which event no delivery was made at the sidewalk site. There is no evidence as to whether the defendant made a sidewalk delivery on January 7, 1956. It was shown that for some period of time prior to January 7, 1956, the newsboys threw some of the binder wires on the sidewalk or in the street. Some of the wires were placed in trash or garbage cans located nearby. The defendant's agents knew that the newsboys were leaving the wires on the sidewalk. The florist and the manager of the bus terminal notified the defendant of this practice of the newsboys and the defendant promised to "see to it."

Plaintiff did not see the wire over which she tripped until after she fell. When she was picked up the wire loop rolled off her foot. She saw the loop lying on the sidewalk after she was picked up. Other witnesses testified that they saw a wire loop on the sidewalk immediately after plaintiff fell. They testified that it was the same kind of wire as that used to bind the defendant's papers, identifying it by the nature of the machine twist which fastened the ends together. The morning after plaintiff's accident a witness picked up a wire loop from the sidewalk in front of the bus terminal. It was not established that this was the same wire as that which tripped plaintiff. The wire which caused plaintiff's fall was not introduced into evidence. A wire loop used by defendant to bind its papers was put in evidence and was identified by

witnesses as the same kind of loop as that which was on the sidewalk immediately after the plaintiff fell. There is no evidence that any of the defendant's newspapers were unwrapped by the newsboys on January 7, 1956, or that they threw any wire loops on the sidewalk that day. Bundles of the Oregon Journal and the Oregonian were also customarily delivered near the place where plaintiff fell, the Oregon Journal about sixty feet south of the bus terminal, and the Oregonian in front of a theater across the street.

Pete Wold, the manager of the bus terminal, testified that at 5:45 p. m. on January 7, 1956, he swept the sidewalk in front of the bus depot and that there were no wires on that part of the sidewalk after that time.

Defendant contends that it is not liable for the conduct of the newsboys in leaving the wire loops on the sidewalk for the reason that the newsboys were not its servants but were independent contractors engaged in the business of buying and selling newspapers as independent merchants.

■ It is not necessary for us to determine whether or not this contention is sound. Assuming that the relationship between the defendant and the newsboys was that of employer and independent contractor respectively, there is nevertheless a sound basis for defendant's liability on the facts of this case. The complaint is not limited to a charge of vicarious liability; it alleges that defendant itself was negligent in permitting wire to be left on the sidewalk by the newspaper carriers. An employer may be liable for his failure to select a careful contractor. The rule is stated in Prosser on Torts, p 358:

"* * * Where there is a foreseeable risk of harm to others unless precautions are taken, it is

his [the employer's] duty to exercise reasonable care to select a competent and careful contractor, and to provide, in the contract or otherwise, for such precautions. So far as he gives directions for the work, furnishes equipment for it, or retains control over any part of it, he is required to exercise reasonable care for the protection of others; and he must likewise interfere to put a stop to any unnecessarily dangerous practices, and make a reasonable inspection of the work after it is completed, to be sure that it is safe."

■ There was substantial evidence to show that the defendant was aware of the conduct of the newsboys in leaving the binder wires on the sidewalk and street. We have already alluded to the evidence establishing that the defendant was notified of the dangerous condition created by this course of conduct and the defendant's promise to correct it. Having knowledge of the actual conduct of the newsboys and the hazard which their conduct created, the defendant will not be permitted to insulate itself from liability by asserting that those who were employed to sell its product were independent contractors. The negligence lies in creating a situation which "involves an unreasonable risk to another because of the expectable action of * * * a third person." 2 Restatement, Torts, § 302 (b), and see also § 449.

The more difficult question presented to us is whether there is sufficient evidence to warrant submitting to the jury the question of the causal connection between defendant's negligence and the plaintiff's injury. Defendant maintains that the proof on this score is so sparse that the jury would be required to engage in conjecture in resolving the question.

The evaluation of the evidence to determine whether a verdict can stand is one of the most difficult tasks

presented to the courts. Smith, The Power of the Judge to Direct a Verdict, 24 Colum L Rev 111 (1924). The citation of cases is of little value because the character of the evidence in each case varies and must be tested ad hoc.

■ The general principle which describes our function in this class of cases is clearly stated in the dissenting opinion of Chief Justice McALLISTER in *Secanti v. Jones,* 71 Adv Sh 81, 349 P2d 274, 277 et seq. (1960). The following quotations, used to describe the principle, are worth repeating. In 2 Harper & James, The Law of. Torts, § 19.4, p. 1068, it is stated:

> " 'The test is often expressed in this way: where from the facts most favorable to the plaintiff the non-existence of the fact to be inferred is just as probable as its existence (or more probable than its existence), the conclusion that it exists is a matter of speculation, surmise, and conjecture, and a jury will not be permitted to draw it. '[W]here the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that there is no sufficient proof.' "

Prosser on Torts (2nd ed), § 42, p 200 expresses the same idea as follows:

> " '* * * What is required is evidence from which reasonable men may conclude that, upon the whole, it. is more likely that there was negligence than that there was not. Where the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained.' "

Oregon cases which have adopted the foregoing test are set out in Chief Justice McALLISTER's opinion. A

test more favorable to the plaintiff has been applied in some jurisdictions. See *Lavender v. Kurn,* 327 US 645, 66 S Ct 740, 90 L Ed 916 (1945); *Pennsylvania R. R. v. Goldie,* 182 F2d 9 (6th Cir 1950); Note, 13 Rutgers L Rev 727, at 729 note 12 (1959).

In the case at bar our task is to examine the probable causes of plaintiff's injury and determine if the probabilities favor the plaintiff's contention that defendant caused the injury. What are the probable causes?

■ The evidence must be taken as establishing that the wire loop which caused plaintiff to fall came from one of the bundles of papers delivered by defendant. The testimony of the witnesses who identified the wire as defendant's wire is attacked by defendant on the ground that the witnesses did not make a sufficiently close inspection to be able to say with any certainty whether the wire came from defendant's papers or from those of the Oregonian or the Oregon Journal, both of which were distributed in the vicinity. This objection goes only to the weight of the evidence and not to its admissibility, and since the jury could accept it as true, so must we.

By identifying the wire as one originating from defendant's papers rather than from those distributed by the other publishers, the plaintiff has narrowed the causal probabilities. Accepting this testimony, it is highly probable that defendant created the instrument which caused the harm.

However, the instrument may have found its way to the place of danger through an agency for which defendant was not responsible. Whether the injury should be regarded as resulting from defendant's conduct or from a superseding cause is again a matter of weighing probabilities. Plaintiff's burden in establish-

ing the causal connection is stated in Prosser on Torts, p 222 as follows:

"* * * He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

Essentially the same test is stated in *Simpson v. Hillman,* 163 Or 357, 364, 97 P2d 257 (1940), in the following language:

"It is well established that the causal connection between defendant's act or omission and the injury must not be left to surmise or conjecture. The evidence must be something more substantial than merely indicating a possibility that the alleged negligence of the defendant was the proximate cause of the injury. When the evidence shows two or more equally probable causes of injury, for not all of which the defendant is responsible, no action for negligence can be maintained. In other words negligence can not be based on conjecture or speculation. It must be fairly and reasonably inferable from the evidence * * *."

Defendant recognizes the applicability of the foregoing test but it maintains that plaintiff has not met the burden of proof which the test imposes. Defendant contends that "there are many possibilities suggested by the record as to how the wire got to the scene of the accident and for which defendant would not be responsible." The "possibilities suggested by the record" are not specified and we have been unable to find in the record any evidence of a substantial nature explaining how the wire could have gotten to the place

of the accident other than through the conduct of the defendant.

Considerable emphasis is placed upon the testimony of Pete Wold, the manager of the bus terminal. He testified that at 5:45 p.m. on the day of the accident he had cleaned up the sidewalk in front of the bus terminal. The bus terminal frontage was approximately seventy-five feet. The distance from the front door of the bus terminal to the place where the bundles of papers were customarily delivered was about sixty feet. It was established that the newsboys customarily picked up their papers not later than four o'clock, and on Saturdays their practice was to obtain their papers earlier, and frequently they picked them up at defendant's plant. There was no evidence that defendant's papers were delivered at the sidewalk on January 7, 1956, the day of the accident. On the basis of this evidence defendant contends that the presence of the wire loop on the sidewalk area which was cleaned at a time after delivery of papers to the sidewalk site was customarily made, creates a strong probability that the wire came to rest at the scene of the accident not through any conduct of the defendant or its employees but through some superseding cause or causes.

■ There were, of course, various ways in which the wire could have reached the scene of the accident; it could have been kicked along from another part of the sidewalk by a pedestrian; it could have been thrown there by a newsboy or by a child in play or by any other person; it could have been thrown up from the street by a passing vehicle. Whether these and other possible causes will help balance the probabilities in favor of the defendant will depend upon the scope of its duty. And its duty is, in part, determined by the seriousness of the hazard created by the wire loops

which it used in its business. We are of the opinion that its duty was broad enough to impose liability upon it for harm resulting from the intervening acts of third persons mentioned above. The defendant had actual knowledge of the hazardous condition created by the wires. It was reasonably foreseeable that once the wires were cast aside by the newsboys the hazard would continue, even though the wires were for a time in the street or at a place on the sidewalk which rendered them harmless until another agency again set the hazardous instrument in motion. Foreseeable acts of third persons do not constitute superseding causes. *Poole v. Tilford,* 99 Or 585, 195 P 1114 (1921); 2 Harper & James, The Law of Torts, §§ 20.2, 20.5, p 1141-1147; Prosser on Torts (2nd ed), § 49. Cf., *Herring v. Springbook Packing Co.,* 208 Or 191, 299 P2d 604, 300 P2d 477 (1956); *Arneil v. Schnitzer,* 173 Or 179, 144 P2d 707 (1944).

■ We are of the opinion, therefore, that although defendant might suggest some probable causes which would insulate defendant's negligence as a causal factor, there were in the present case sufficient facts to indicate that it was more probable than not that defendant's conduct was the cause of plaintiff's injury. Plaintiff is not required to eliminate all other possible causes in order to get her case to the jury. *Rocona v. Guy F. Atkinson Co.,* 173 F2d 661 (9th Cir 1949); *Lunde v. Cudahy Packing Co.,* 139 Iowa 688, 117 NW 1063 (1908); *Harmon v. Richardson,* 88 N H 312, 188 A 468 (1936); *Burlington-Rock Island R. Co. v. Ellison,* 140 Tex 353, 167 SW2d 723 (1943); *Bock v. Fellman Dry Goods Co.,* 212 SW 635 (Tex App 1919). See: Burns, Weighing Circumstantial Evidence, 2 S D L Rev 36 (1957).

We cannot support our belief by mathematical proof

that the probabilities favor the plaintiff's contention. 2 Harper & James, The Law of Torts, § 15.2, pp 878, 879. See, James, Function of Judge and Jury in Negligence Cases, 58 Yale L J 667 at 674 (1949). We have only our own experiences, observations and understanding of what commonly happens from which to judge whether the inferences drawn from the circumstances connect up defendant's conduct to the injury more strongly than the conduct of some other person.

■ The case at bar is not unlike those cases in which a person seeks to recover from a merchant for injuries resulting from tripping upon an object on the ground or floor of the business premises. The defendant here has chosen to use the public sidewalk as a place to conduct a part of its business. The duty to keep its business premises free from hazards of its own making is as great if not greater than that of a merchant who conducts his business on private property.

The problem of causation presented to us in the instant case has been dealt with in a number of cases. Typical of such cases is *Sears, Roebuck & Co. v. Peterson,* 76 F2d 243 (8th Cir 1935), cited by the plaintiff. In that case plaintiff fell when her foot became entangled in some binding twine lying in the aisle of defendant's department store. The court held that the jury could conclude that defendant was negligent based upon the inference that the defendant's servants had removed the twine from merchandise and left the twine in the aisle of the store. The court said that "there was little room for the speculation that some third person might have placed this twine where it was found." 76 F2d at page 247. In identifying the defendant's conduct as the cause of the accident the court said:

"The following circumstances may be noted as bearing upon the question of negligence: (1) The

twine in which plaintiff became entangled, and over which she fell, was the character of twine used by defendant in wrapping the evergreen trees; (2) it was the same length as that used in wrapping a tree; (3) it had at its end the same kind of loop or knot as that used; (4) it was lying near an unwrapped tree; (5) only employees of defendant unwrapped and removed the twine from these trees. From these circumstances, the jury was warranted in inferring that the twine over which plaintiff tripped and fell had been removed from one of the evergreen trees by one of the defendant's clerks, and thrown or left in the aisle by him. These inferences all logically flow from the proven facts." 76 F2d at page 246.

■ Equally strong inferences support the causal connection between defendant's conduct and plaintiff's injury in the instant case. For other cases holding that proof of causation was sufficient to warrant the submission of the question to the jury see *E. K. Wood Lumber Co. v. Andersen,* 81 F2d 161 (9th Cir 1936); *Upton v. Conway Lumber Co.,* 81 N H 489, 128 A 802 (1925); *Ingersoll v. Liberty Bank of Buffalo,* 278 NY 1, 14 NE2d 828 (1938). See 2 Harper & James, The Law of Torts, § 19.4 But cf., *Fisher Bros. Co. v. Deluca,* 10 Ohio L Abs 488 (1931).

Cases in which the explanation for an injury can be more readily found in probable causes for which the defendant is not responsible are clearly distinguishable. *Kuehn v. Bennett,* 193 Or 485, 238 P2d 787 (1951); *Starberg v. Olbekson,* 169 Or 369, 129 P2d 62 (1942); *Simpson v. Hillman,* supra; *Houston v. Republican Athletic Ass'n.,* 343 Pa 218, 22 A2d 715 (1941); *Hyer v. City of Janesville,* 101 Wis 371, 77 NW 729 (1898).

Defendant argues that the causal connection between conduct and injury could be made in this case

only by basing an inference on an inference, which, it is contended, is not permissible in reaching a verdict. The proscription against the use of an inference on an inference is recognized in several of our cases. *Wood v. Southern Pacific Co.,* 216 Or 61, 337 P2d 779 (1959) ; *State v. Dennis,* 177 Or 73, 159 P2d 838, 161 P2d 670 (1945) ; *Hayes v. Ogle,* 143 Or 1, 21 P2d 223 (1933) ; *Deniff v. Charles R. McCormick Co.,* 105 Or 697, 210 P 703 (1922) ; *Keller v. Johnson,* 99 Or 113, 194 P 185 (1920) ; *State v. Rader,* 94 Or 432, 186 P 79 (1919) ; *Stamm v. Wood,* 86 Or 174, 168 P 69 (1917) ; *Lintner v. Wiles,* 70 Or 350, 141 P 871 (1914). It is said to be a creature of statute in this state, *McKay v. State Ind. Acc. Comm.,* 161 Or 191, 87 P2d 202 (1939), reference being made to ORS 41.330 which requires that "An inference must be founded \* \* \* on a fact legally proved." It is doubtful whether the statute should be so interpreted. Note, 17 So Calif L Rev 63 (1943). And see, *Fegles Const. Co. v. McLaughlin Const. Co.,* 205 F2d 637 (9th Cir 1953) construing a similar statute to mean that a "fact legally proved" may be arrived at by inference which in turn may be used as the basis for another inference.

 The so-called rule against predicating an inference on an inference is widely criticized. 2 Harper & James, The Law of Torts, § 19.4, p 1071; 1 Wigmore, Evidence (3rd ed), § 41; Diefenbach, The Rule: An Inference of Fact Cannot be Predicated Upon Another Inference, 15 Ohio Bar Ass'n Rep 541 (1943) ; Jenings, Probative Value of An Inference Drawn upon Another Inference, 22 Cincinnati L Rev 39 (1953) ; Note, 8 Ala L Rev 396 (1956) ; Comment, 21 Brooklyn L Rev 277 (1955) ; Note, 14 Ind L J 265 (1939) ; Note, 8 Ind L J 203 (1932). And there is some question as to whether it is in fact applied in our adjudicated cases. In *State*

*v. Dennis,* 177 Or 73, 79, 159 P2d 838, 161 P2d 670 (1945), Mr. Justice BRAND states that "The rule was not intended, and must not be applied, to inhibit or prevent any of the logical inductive or deductive processes by which the mind arrives at reasoned conclusions from adequate data." A similar explanation of the rule is expressed by Mr. Justice LUSK in *McKay v. State Ind. Acc. Comm.,* 161 Or 191, 87 P2d 202 (1939) at page 199 where he says that the rule "is merely a means of testing logically the relevancy or sufficiency of evidence to prove a fact in dispute." As Wigmore, op cit supra points out, our ordinary method of reasoning is by building inference upon inference; "All departments of reasoning, all scientific work, every day's life and every day's trials, proceed upon such data." If, then, the rule "must not be applied to inhibit" this reasoning process it would seem that, as Justice LUSK indicates, it is simply a warning against the drawing of tenuous inferences. The idea intended to be expressed here is well stated in *Vaccarezza v. Sanguinetti,* 71 Cal App2d 687, 698, 163 P2d 470, 477 (1945):

> "* * * The statement appearing in some cases that an inference cannot be based upon an inference, usually without citation and certainly without adequate discussion, does not and cannot mean that an inference cannot be based upon a fact which is itself based upon circumstantial evidence. If that were the rule it would mean that few cases based on circumstantial evidence could ever be tried because it is seldom indeed that but one fact, in such a case, is based on circumstantial evidence. If that were the rule the hundreds of decisions in our books affirming judgments where the findings contain a series of facts each proved by circumstantial evidence would necessarily be wrong. Nearly all departments of reasoning are based upon deducing one fact from another fact that has itself been deduced from a

prior fact. The only fallacy that may occur in such reasoning is where a deduced fact is based upon circumstantial evidence that is unreliable, is too remote or is too conjectural. The true rule is and should be that an inference cannot be based on an inference that is too remote or conjectural. In a civil case, if the first inference is a reasonably probable one it may be used as a basis for a succeeding inference. This is the only conceivable basis upon which the otherwise apparently conflicting cases can be reconciled."

The steps in reasoning by which any proposition is sought to be proved can almost always be stated separately in such a way as to reveal the process of moving from one inference to another in the course of proof. Where the inferences are strong enough ordinarily we do not express them in explaining how we reasoned to our conclusion. The admissibility of evidence should not rest upon a method of expressing the process of proof. We believe that proof of defendant's conduct as a substantial factor in producing the injury can be made out without violating the rule against the drawing of tenuous inferences. The evidence that wires were on the sidewalk on the day of the accident (Wold's testimony that he cleaned up wires from the area in front of the bus terminal), that defendant's wire tripped plaintiff, that defendant knew of the hazardous condition in the past—all this was established by direct rather than by circumstantial evidence. With this evidence as a foundation we do not think that it is unreasonable to permit an inference that the wire which felled plaintiff came to be where it was through the defendant's conduct and the foreseeable conduct of others.

Judgment affirmed.