Argued March 4, reversed July 17, 1968

## CONGER, *Respondent, v.* DANT & RUSSELL, INC., *Appellant.*

443 P. 2d 201

*Edwin J. Peterson,* Portland, argued the cause for appellant. With him on the briefs were Tooze, Powers, Kerr, Tooze & Peterson and Paul R. Duden, Portland.

*William F. White,* Portland, argued the cause for respondent. With him on the brief were White, Sutherland & Gilbertson, Portland, Robert C. MacDonald and MacDonald, Dean & McCallister, Astoria.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and HOLMAN, Justices.

DENECKE, J.

The plaintiff brought this action for damages to his fishing boat caused when the boat struck a submerged log allegedly allowed to be in its hazardous position because of the fault of the defendant sawmill operator. The jury found for the plaintiff, and the defendant appeals.

■ One of the questions on appeal is whether there is any evidence from which a jury could reasonably find that the fault of the defendant was a cause in fact of the damage to the plaintiff. This question was raised by defendant's motion for a directed verdict. We conclude there was no evidence of causation.

Whether there is sufficient evidence that the defendant's fault is a cause in fact of the plaintiff's damage to submit that issue to the jury is frequently a perplexing question and, therefore, we set out the evidence to illustrate the facts which we conclude do not justify submitting the issue to the jury.

The action all occurred upon the Skipanon River, a short tidal stream about 400 to 500 feet in width. Fishing and pleasure boats and perhaps some ocean cargo vessels use the river. The defendant operated a sawmill on the south side of the river. On April 22, 1965, the plaintiff collided with a submerged log, known as a sinker, in mid-channel about 1500 feet upstream from the boom where defendant stored logs for use in the mill. The place of collision was on the usual course of vessels using the river. The log had one end stuck in the mud and the free end was under the water. The log was branded "G.W."

A logging company dumped logs branded "G.W." into the river about a mile upstream from the point of collision. One Nygaard, on behalf of the logging company, rafted and floated these logs down the river to

tie-up points on the north side of the river. These points were all upstream from the point of collision, the closest being about 200-300 yards from such point. At these tie-up points Nygaard sorted the logs, including "G.W." logs. The defendant mill operator bought logs from the logging company and took title when the logs were at these tie-up points. Although a few of the "G.W." branded logs were sold to other buyers, practically all were sold to defendant and transported to its Skipanon mill. Logs with the "G.W." brand were only dumped in the river from April to October 1964.

When logs were needed at the mill the defendant's tug towed the rafts from Nygaard's tie-up points to the mill. On such tows the defendant's tug and its raft would pass over or near the place where the collision occurred. It had been called to the defendant's attention that occasionally a log was lost out of the raft as it was being towed by the defendant to the mill. There were sinker logs floating in the river at least one-half mile above defendant's mill presumably lost from Nygaard's or the logging company's control.

The question is, did the offending log escape from the control of the defendant or from the control of the logging company or its agent Nygaard? If it escaped from the defendant's control, then the defendant caused plaintiff's damages; if it escaped from the logging company's control, the defendant is not responsible. The subsidiary question and the exact issue is, was there sufficient evidence that it escaped from the defendant's control to support a verdict against the defendant?

The plaintiff asserts that the defendant concedes that federal maritime law applies because the damage occurred upon navigable waters of the United States.

No special United States statutes such as the Jones Act are involved, and the general maritime law upon what evidence of causation is necessary to support a finding of the trier of fact appears to be similar to the law of Oregon. *McAllister v. United States,* 348 US 19, 22, 75 S Ct 6, 99 L ed 20 (1954).

In *Kaufman v. Fisher,* 230 Or 626, 636, 371 P2d 948 (1962), we stated the rule: "* * * [P]laintiff can get to the jury if there is a rational basis for concluding that it was more probable than not that the defendant's failure to exercise reasonable care was the cause of the accident."

In *Eitel v. Times, Inc.,* 221 Or 585, 593-598, 352 P2d 485, 5 ALR3d 86 (1960), the plaintiff incurred injuries when she tripped upon a wire on the sidewalk. The plaintiff sought to prove that the injuries were caused by a wire from newspapers deposited by the defendant and that the defendant caused the wire to be where it presented a danger to the plaintiff. We held that a jury could reasonably find that the defendant caused the injuries.

In this case we conclude that there is no more rational basis for finding that the defendant permitted the sinker log to get out of its control and become a navigational hazard than for finding that the log became a free agent while owned and controlled by the logging company. For this reason a jury could find for the plaintiff only by speculation. This is not permissible.

In *Eitel v. Times, Inc.,* supra (221 Or 585), the jury could have reasonably found that the wire was brought onto the scene by the defendant. In this case the jury has no basis to decide whether the log escaped from the control of the defendant or from the control of the logging company; both had control of "G.W."

branded logs in this part of the river. The exact site of the collision is closer to the scene of the defendant's activities than those of Nygaard and the logging company; however, under the circumstances this does not tilt the scale against the defendant. The Skipanon has tides up to six feet and some current, both of which cause floating objects, including sinker logs, to drift all directions from the point of their initial escape.

How long the offending sinker log had been at the site of the collision is completely unknown. The position of the butt end sunk in the river bottom would indicate it had been there for sometime. On the other hand, it was in the middle of a busy channel where it was likely to have been struck if it had remained in such position very long. The collision was April 22, 1965, and the evidence is that the defendant probably towed the last "G.W." branded logs to its mill no later than the middle of November 1964.

The trial court was well aware of the difficulty of the problem. Its task is the same as that of this court. We observed in *Eitel v. Times, Inc.,* supra (221 Or at 592): "* * * The citation of cases is of little value because the character of the evidence in each case varies and must be tested ad hoc."

Relying upon "our own experiences, observations and understanding of what commonly happens" (*Eitel v. Times, Inc.,* supra, at 597), we hold there was insufficient evidence of causation to submit the issue to the jury and the defendant's motion of directed verdict should have been sustained.

Reversed.