Argued September 16, 1970, affirmed January 13, 1971

SMITH, *Appellant, v.* BABCOCK ET AL, *Respondents.*

479 P2d 223

*James G. Breathouwer*, Portland, argued the cause for appellant. With him on the brief were Seitz, Whipple, Bemis & Breathouwer and George M. Joseph, Portland.

*Alfred T. McGill*, Portland, argued the cause for respondent Babcock. On the brief were McGill & Clarke, Portland.

*Richard E. Kriesien*, Portland, argued the cause for respondent Gibbons and Reed Company. On the brief were Leo Levenson and Mize, Kriesien, Fewless & Cheney, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN and HOWELL, Justices.

HOWELL, J.

Plaintiff filed this action for personal injuries against the defendant, Raymond L. Babcock, and Babcock's employer, Gibbons and Reed Company. The trial court entered a judgment of involuntary nonsuit in favor of Gibbons and Reed, and a jury returned a verdict in favor of defendant Babcock. Plaintiff appeals.

Plaintiff contends the court erred in entering the judgment of involuntary nonsuit.

During April 1967 the defendant Gibbons and Reed, a general contractor, was constructing the Stadium Freeway in Portland. The contractor had started construction at the east end of the freeway and had it completed and open to travel as far west

as the 13th Avenue entrance ramp. The ramp was two lanes wide at its entrance but narrowed to one lane before it entered the eastbound portion of the freeway. At the bottom the ramp served as a feeder to three eastbound lanes of traffic.

To the west of the 13th Avenue entrance, the freeway was still under construction and not open to public travel. Defendant's construction office was located on the unfinished portion of the freeway just west of the 13th Avenue entrance. Ten to fifteen cars belonging to construction workers were parked near the office, and other office personnel parked in the general area of the construction. Others parked on streets away from the construction site.

On the morning of the accident, the defendant Babcock, a foreman for Gibbons and Reed, the general contractor, entered the 13th Avenue ramp on his way to work. At the bottom of the ramp, near where it entered the eastbound freeway, he slowed his pickup and directed it to the right preparatory to making a sharp left turn around a guard rail at the bottom of the ramp in order to reverse direction and to proceed west on the unfinished portion of the freeway to the construction office.

Plaintiff, who was proceeding down the ramp behind Babcock's pickup, started to pass Babcock on the left at the bottom of the ramp near where it entered the freeway. When Babcock turned left, the vehicles collided and plaintiff was injured.

The plaintiff alleged that defendant Gibbons and Reed, the general contractor, was negligent in permitting employees to park in a construction area which could be reached only by making a U-turn, creating a hazard to motorists following the employees; in fail-

ing to provide a flagman or otherwise to warn motorists that its employees, including Babcock, would cross the main traveled traffic lanes of the freeway while in the process of making U-turns into the construction parking area.

The plaintiff concedes that his cause of action against the contractor cannot be based on *respondeat superior* because Babcock was on his way to work at the time of the accident and therefore was not in the course and scope of his employment.

The plaintiff attempts to establish a duty on the part of the defendant by relying on 2 Restatement (Second) Torts, §§ 302, 302A, 303, 364 and 368. Sections 302, 302A and 303 concern standards of conduct which may be used to determine whether defendant's conduct was negligent. Section 364 pertains to the liability of a possessor of land for the creation or maintenance of a dangerous artificial condition. Section 368 pertains to the liability of a possessor of land for the creation or maintenance of an artificial condition which is dangerous to travelers on an adjacent highway. The comment and the illustrations relating to the last section all refer to situations where the traveler is directly affected or injured by the artificial condition and do not mention situations where the acts of third parties are involved as in the instant case.

■ However, there is another reason why the plaintiff cannot prevail against the defendant Gibbons and Reed. It is axiomatic that the plaintiff must establish by a preponderance of the evidence that the negligence charged—permitting parking in an area which was reached by making a sharp left turn off the highway—was a substantial or proximate cause of the accident and plaintiff's injuries.

We conclude that allowing parking in the construction area was not a substantial factor in causing plaintiff's injuries. Rather, the accident was caused by the negligence of the plaintiff, or by the combined negligence of the plaintiff and Babcock in causing their vehicles to collide at the scene of the accident.

Gibbons and Reed did not require Babcock to park in any given place; Babcock and other employees also parked on side streets near the area. At the time of the accident Babcock and plaintiff were traveling on the ramp, a public street. Babcock started a sharp left turn at the bottom of the ramp, plaintiff started to pass, and the two vehicles collided.

We see no difference between this situation and any one where an employee on his way to work makes a left-hand turn on a public highway to enter his place of employment and collides with another car. The cause of the accident is not the place of employment, but rather the acts of the operators of the two vehicles. It is true that Babcock stated in a deposition that he always turned his signal on because "it was a very hazardous spot." If so, the hazard was created by Babcock who was not required to use this route and who had the obligation to use due care in relation to other vehicles.

Plaintiff cites the cases of *Eitel v. Times, Inc.*, 221 Or 585, 352 P2d 485 (1960) and *Escobedo v. Ward*, 255 Or 85, 464 P2d 698 (1970). The cases are readily distinguishable. In *Eitel* the plaintiff tripped on a wire. The defendant was charged with negligence in allowing wires from bundles of newspapers to remain on a public sidewalk. The defendant knew the wires were being left on the sidewalk and promised to correct the practice. This court held that it was highly

probable that defendant created the situation which caused the harm and that it was reasonably foreseeable that the wires cast aside by the newsboys would create a hazard. The defendant's conduct of casting aside wires on a public street was more probably than not the cause of plaintiff's fall and injuries.

In the instant case the cause of plaintiff's injuries was not defendant's act of permitting parking on and around the job site, but the acts of the two drivers in turning and passing on a public highway. We do not believe that the evidence afforded a reasonable basis for the conclusion that it was more likely than not that the conduct of the defendant was a substantial factor in the result.

In *Escobedo* the action involved the death of a child who was killed by an earth slide in a gravel pit used by the defendant but owned by another. This court held that it was for the jury to decide whether defendant's excavations in the pit caused the slide and plaintiff's injuries. In *Escobedo* it was the affirmative acts of the defendant which directly caused the child's injuries and death. In the instant case plaintiff's injuries were the result of the collision between the two vehicles on a public street, not because some employees parked in the construction area.

The trial court properly allowed the motion for a judgment of involuntary nonsuit.

The plaintiff also assigns as error the refusal of the trial court to strike the following allegations of contributory negligence alleged in the defendant Babcock's answer:

> "4. In attempting to pass the defendant Raymond L. Babcock and failing to drive entirely within a single lane and moving from such lane,

without first ascertaining that such movement could be made in safety.

"5. In attempting to pass within a single lane of traffic; and attempting to pass at a place where there was not space to allow a safe distance to the left of this defendant's vehicle."

■ There was ample evidence to support the defendant Babcock's charges that the plaintiff was contributorily negligent in passing without first ascertaining that the passing could be made in safety and in passing in an area where there was insufficient space to the left side of the Babcock vehicle.

The plaintiff testified that he followed Babcock down the one-lane section of the ramp, and at or near the bottom of the ramp he increased his speed and started to pass when he saw the Babcock vehicle slow down and pull to the right. Babcock testified that he made his turn about 10 to 15 feet past the guard rail. The evidence disclosed that the accident occurred in an area marked with a solid white line, indicating a continuation of the ramp before the traffic entered the three-lane eastbound freeway. The jury could have found that plaintiff should not have attempted to pass in this area. Babcock testified that he had signaled his left turn. If the jury believed Babcock it could have found that plaintiff should have seen the signal and reduced his speed instead of starting to pass the Babcock vehicle.

The trial court properly submitted the charges of contributory negligence to the jury.

The judgment is affirmed.