Argued October 8, reversed and remanded October 29, petition
for rehearing denied December 6, 1973, petition
for review denied January 22, 1974

## STATE OF OREGON, *Appellant*, *v.* KENNETH ELDON McKAY (No. C 73-04-1252 Cr), *Respondent.*

515 P2d 183

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*N. G. Bhavnani,* Portland, argued the cause for respondent. On the brief was Robert L. McKee, Portland.

Before SCHWAB, Chief Judge, and FOLEY and TANZER, Judges.

FOLEY, J.

Defendant was convicted in district court of driving with more than .15 per cent alcohol in his blood, ORS 483.999, and appealed to circuit court. Prior to trial in the circuit court, he moved to suppress the result of the breath test administered to him on the ground that the chemist who tested the accuracy of the breathalyzer equipment as an employe of the State Board of Health had not been "certified" by the board to test the accuracy of breathalyzer equipment. The circuit court suppressed and the state appeals pursuant to ORS 138.060 (4).

The defendant's contention is that the person who certified the accuracy of the testing equipment was required to have a permit from the State Board of Health "according to [his] qualifications * * *," and because he did not have such, the breath test result was properly suppressed. The state contends that while the statute requires that persons performing breathalyzer tests hold permits from the State Board of Health, permits are not required for the chemist-employes who test the accuracy of the equipment used by those in the field for the analyses, and that the

statute requires only that such chemist-employes be "trained technicians." We agree with the state's contention and reverse.

The appeal involves the construction of ORS 483.644, which reads:

"(1) Chemical analyses of the person's breath, blood, urine or saliva, to be valid under ORS 483.642, shall be performed according to methods approved by the State Board of Health and by an individual possessing a valid permit to perform such analyses issued by the State Board of Health.

"(2) The State Board of Health shall:

"(a) Approve techniques or methods of performing chemical analyses that are satisfactory for determining alcoholic content of a person's blood.

"(b) Prepare manuals and conduct courses throughout the state for the training of police officers in chemical analyses of a person's breath, which courses shall include, but are not limited to, approved methods and techniques of chemical analyses, use of approved equipment and interpretation of test results together with a written examination on these subjects.

"(c) Test and certify the accuracy of equipment to be used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 60 days, such tests and certification to be conducted by trained technicians.

"(d) Ascertain the qualifications and competence of individuals to conduct such analyses in accordance with one or more methods or techniques approved by the board.

"(e) Issue permits to individuals according to their qualifications. Permits shall be issued to police officers only upon satisfactory completion of the prescribed training course and written examination and the permit shall state the methods

and equipment which the police officer is qualified to use. Permits shall be subject to termination or revocation at the discretion of the State Board of Health."

Before the results of a breath test measuring the percentage of alcohol in a person's bloodstream may be received into evidence in prosecutions for traffic offenses involving the use of alcohol, a showing must be made that the equipment used in the test was properly checked for accuracy in the manner prescribed by the Implied Consent Law, ORS 483.634-483.646. *State v. Fogle,* 254 Or 268, 270-75, 459 P2d 873 (1969).

In ruling in defendant's favor herein, the circuit court construed ORS 483.644 (2) as requiring the State Board of Health formally to "certify" the qualifications of its "trained technicians" before such technicians may verify the accuracy of breath-testing equipment, pursuant to ORS 483.644 (2) (c). The statute does not contain such a requirement. It requires the board only to cause the accuracy of breath-testing equipment to be certified by "trained technicians," and that requirement was shown to have been met in this case by State's Exhibit 3, a certified copy of a public record of the Oregon State Board of Health, which attests to the fact that James H. Beck, a "trained technician of the Oregon State Board of Health," verified the accuracy of both the breathalyzer and the ampoule lot involved in the breath test administered defendant within 60 days before the administration of that test. In view of the presumptions that official duty has been regularly performed,[1] that a person acting in a public office was regularly appointed to

[1] ORS 41.360 (15).

it,[2] and that certified copies of public records are admissible and recitals therein are primary evidence of the facts stated,[3] no further showing of compliance with ORS 483.644 (2) (c) was required. There was no evidence to dispute the presumptions. *See State v. Woodward*, 1 Or App 338, 462 P2d 685 (1969).

Reversed and remanded.

---

[2] ORS 41.360 (14).

[3] ORS 43.330 (5); 43.370.