Argued May 20, affirmed June 17, 1974

STATE OF OREGON, *Respondent, v.* TOM IRVIN RAMSEY (No. C-73-08-2477), *Appellant.*

523 P2d 601

*Deane Sterndale Bennett,* Portland, argued the cause and filed the brief for appellant.

*Jim G. Russell,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from conviction of driving a motor vehicle when having .15 percent or more alcohol in his blood in violation of ORS 483.999. The only assignment of error meriting discussion, or for which a sufficient record was made in the trial court, concerns the admission into evidence of the certification of an ampoule containing the chemical reagent used in the breathalyzer testing machine.

The results of the test were received in evidence, and, inter alia, the certification of the ampoule batch number of the chemical used in the machine was received as a basis for that result.[1] The exhibit containing certifications of ampoule batch numbers stated that the "reagent bearing the control numbers listed below were tested * * * and found to be accurate * * *." Certifications for October 27, 1971 and December 23, 1971, which fell on each side of the date of the test made upon defendant (November 20, 1971, which was within the 60-day requirement of ORS 483.644 (2) (c)), showed that the ampoule tests were made on ampoule batches bearing the numbers "43, 70, 85, 243, 470, 580 * * * 68243 * * *," etc. When the arresting officer who administered the breathalyzer test made out the checklist of things he did in performing it, he noted thereon that the ampoule control batch number which he used was 143. No. 143 was not included in the ampoule numbers that were certified. The officer was questioned about the discrepancy. His answer was

---

[1] For a description of the certification process, and the need for the statutory (ORS 483.644 (2) (c)) requirement therefor with reference to batches of chemical reagents shipped in ampoules for use in breathalyzer machines, see State v. McKay, 15 Or App 180, 515 P2d 183 (1973), Sup Ct review denied (1974); and State v. Coffman, 11 Or App 307, 502 P2d 605 (1972).

that he had evidently made a mistake in writing the number 143 down and "* * * it was 243, evidently."

He was closely cross-examined and reexamined in this regard. He said that the numbers on the ampoules were sometimes hard to read, and that the district attorney had suggested the possibility he wrote "143" when he meant "243." He persisted in thinking that the ampoule used was numbered 243. The defense objected to allowing the certification exhibit into evidence. The court ruled that the question of whether the ampoule used was actually certified was for the jury. We deem this ruling to be tantamount to saying, "I, the judge, find there is enough evidence of certification to submit the result of the test to the jury. Yet, the jury must determine whether a properly certified ampoule was used."

Inasmuch as among other ampoule batch numbers on the certification were the numbers 43 and 68243, defendant argues that it is just as probable that the officer made some mistake with reference to those numbers or possibly any other number, or that a batch numbered 143 was actually in use and not certified, as it was probable that the number he actually used was No. 243. The substance of this argument is that, because the number 143 was written down and the officer did not positively say the number he intended to write was 243, the whole matter becomes speculative and the objection should result in a rejection of the entire process.[2]

---

[2] Defendant relies on Menefee v. Blitz, 181 Or 100, 126, 179 P2d 550 (1947), where the court repeated the rule from 5A CJS 989, 990, Appeal & Error § 1725. "* * * The reception of dependent evidence in face of the fact that the preliminary proof was never submitted constitutes error * * *." The rule is inapplicable

We conclude that under the peculiar circumstances of this case the trial judge was not in error in submitting the matter to the jury. *State v. Clark,* 99 Or 629, 196 P 360 (1921), was a prosecution for murder that resulted in a conviction for manslaughter, involving the death of one of two men who went deer hunting together. Part of the evidence was about markings upon shell casings that experts said were made by the extractor of a rifle owned by the defendant and another empty shell casing with similar markings found in the deceased's gun. The court said:

> "* * * [T]he fact that one of the defendant's exploded shells with the mark of the extractor of defendant's gun upon it was found in the barrel of Taylor's [decedent's] gun, was some evidence that it got there by defendant's agency. It is true that this is not the only inference that might be drawn from the circumstances, *but it is a fair inference under the conditions and one which the jury had a right to weigh.*" (Emphasis supplied.) 99 Or at 666.

The court held that the admission of testimony of such nature "rests very largely within the sound discretion of the court * * *." In the case at bar an inference can be drawn that the officer made a mistake in writing down some one of three numbers ending in "43," and if it were any one of them, they were certified. Also, like in *Clark,* another inference can be drawn which is inconsistent with the ultimate fact the state seeks to prove. The jury decides such questions.

In *Eitel v. Times, Inc.,* 221 Or 585, 352 P2d 485, 5 ALR3d 86 (1960), a tort case, plaintiff claimed that

---

to the situation at bar, because the preliminary proof was submitted here — the question is how much weight is to be given to it.

the subject injuries were caused as a result of tripping over wire which bound newspaper bundles. There was evidence that loops of binding wire from three different newspapers were strewn in the area where the accident happened. Witnesses testified that they saw the wire which tripped plaintiff and that it looked like the kind of wire defendant used on its bundles. Objection was made that this was too conjectural to be received as evidence. The court said:

"* * * The testimony of the witnesses who identified the wire as defendant's wire is attacked by defendant on the ground that the witnesses did not make a sufficiently close inspection to be able to say with any certainty whether the wire came from defendant's papers or from those of the Oregonian or the Oregon Journal, both of which were distributed in the vicinity. This objection goes only to the weight of the evidence and not to its admissibility, and since the jury could accept it as true, so must we." 221 Or at 593.

*See also Alvarez v. Retail Credit Ass'n,* 234 Or 255, 265, 381 P2d 499 (1963); and *State v. Dennis,* 177 Or 73, 79, 159 P2d 838, 161 P2d 670 (1945). As the titles of the cases cited above indicate, it appears the rule is applicable in criminal cases and civil cases. *See also* Annotation, 5 ALR3d 100, 158 (1966).

Affirmed.