Argued January 8, re-argued September 10, 1970, affirmed
January 20, 1971

BURNHAM, *Respondent, v.* ESHLEMAN,
*Appellant.*

479 P2d 501

*George L. Hibbard,* Oregon City, argued the cause for appellant. With him on the briefs were Rhoten, Rhoten & Speerstra, and Myron L. Enfield, Salem, and Hibbard, Jacobs, Caldwell & Canning, Oregon City.

*W. T. Hollen,* Newport, argued the cause and filed briefs for respondent.

Before O'CONNELL,[*] Chief Justice, and McALLISTER, DENECKE, HOLMAN, TONGUE, HOWELL and MENGLER, Justices.

MENGLER, J., (Pro Tempore).

This is an appeal from a judgment entered upon a verdict for the plaintiff in an action for personal injuries from a collision of a motorcycle and an automobile.

The collision occurred about 2 a.m. on Fogarty Street, which runs north and south in the city of Newport. The street was surfaced with black top, between 18 to 20 feet in width, uncurbed, and not

---

[*] O'Connell, C.J., did not participate in the decision of this case.

marked with a center stripe. The street begins on the south at the approximate level of Yaquina Bay, and to the north it ascends a very steep hill. The hill is described in both briefs as "a precipitous San Francisco type hill." The extreme upper portion of the street levels off abruptly to a flat area. Just below the point at which Fogarty Street starts down the very steep hill from the flat area, it intersects with Second Street, an east-west street. The plaintiff was riding his motorcycle north up the hill. The defendant was driving his automobile south across the flat area. At the time of the accident, there was an excavation with dirt piled around it in the southbound lane on Fogarty Street. The testimony is in conflict as to whether the excavation and dirt covered the entire or only one-third of the southbound lane.

The plaintiff first saw the headlights of the defendant's automobile just before plaintiff reached the crest of the hill where it levels off. The defendant first saw the motorcycle after he had passed the excavation and was breaking over the crest of the hill. The accident occurred approximately 20 feet south of the intersection of Fogarty Street with Second Street at which point the street is 18 feet wide. The plaintiff had traveled Fogarty Street earlier and was aware of the existence of the excavation.

The plaintiff testified that he was driving up the middle of the right half of Fogarty Street. The defendant testified that, at his first observation, the plaintiff was in the center of the street and that plaintiff then turned to the left toward the defendant and came straight at the defendant on an angle across the street. Two independent witnesses testified that

the plaintiff was riding up the middle of the street and that the collision occurred by the motorcycle's hitting the car in the defendant's right half of the street.

The defendant testified that he drove in the left hand lane at 20 miles per hour around the obstruction but that, at the time of the collision, he was two-thirds of the way back into his own lane. The evidence as to the exact position in the street where the collision occurred is in dispute. A city police officer testified that the debris from the collision was in the defendant's lane of travel. The physical facts are that the automobile was damaged on the right front and that, after the collision, the automobile, motorcycle, and the plaintiff were all on the westerly edge, or defendant's side, of the street.

The defendant, Eshleman, in his Answer filed April 25, 1967, alleged that the plaintiff was contributorily negligent in the following particulars:

"1) He failed to keep a lookout;

"2) He failed to keep the Honda Motor Bike under control;

"3) He drove the Honda Motor Bike at a speed greater than was reasonable and prudent, [without] having due regard to the traffic, surface and width of the highway, the hazardous intersections and other conditions then and there existing;

"4) He failed to drive the Honda Motor Bike upon the right half of the highway at a time when the right half was not out of repair, and at a time when the plaintiff was not overtaking and passing another vehicle.

"5) He failed to drive as close as practicable to the right-hand edge or curb of the highway, and

"6) In meeting a vehicle proceeding in the op-

posite direction, he failed to pass the said other vehicle to the right, and

"7) In meeting a vehicle proceeding in the opposite direction, he failed to give to the other vehicle at least one-half of the main traveled portion of the roadway."

On June 15, 1967, the court entered an Order striking sub-paragraphs (5), (6), and (7). On July 14, 1967, the defendant, Eshleman, filed his Amended Answer, in which he omitted sub-paragraphs (5), (6), and (7). On September 12, 1968, the date of trial, the plaintiff filed his Second Amended Complaint. The defendant, Eshleman, did not file an Answer to the Second Amended Complaint, but the plaintiff did file a Reply. The defendant, in his "Appellant's Abstract of Record and Brief," recites as follows:

"The Defendant did on or about April 25, 1967, file an answer to the amended complaint and it was stipulated that the said answer could stand as an answer to the Second Amended Complaint * * *."

This recited stipulation is not referred to by the plaintiff in his brief. The stipulation is not in the Transcript of Proceedings.

The first assignment of error is based on the court's failure to give a requested instruction as follows:

"I instruct you that it is the law of Oregon that in driving upon the right half of the highway the driver shall drive as close as practicable to the right-hand edge or curb of the highway except when overtaking or passing another vehicle or when placing his vehicle in a position to make a left turn."

A party litigant is entitled to have the court instruct the jury upon his theory of the case as formulated in properly requested instructions which correctly state the law and which are founded upon the pleadings and proof in the case. *Denton v. Arnstein*, 197 Or 28, 46, 250 P2d 407 (1953).

■ It was not error for the court to refuse to give the requested instruction on an allegation of contributory negligence which had been stricken by the court prior to the trial of the case. There is no showing in the record that the trial judge vacated or set aside his order striking the allegation.

■ The defendant alleges five further errors, each directed to admission into evidence of fourteen photographs. The photographs were taken by plaintiff's parents eight or nine hours after the accident. The plaintiff's father testified that the pictures were a true representation of the scene at the time of the taking of the pictures, but did not testify that the scene was the same as it was immediately following the accident.

The exhibits were offered without explanation except that they were a true representation of the scene at the time of the taking of the pictures. The objection was based on the ground that there was no evidence that they fairly represented the scene at the time of the accident. The photographs apparently were offered to illustrate the scene. There was no jury view of the scene. It was important to the case that the topographical setting be described to the jury. The pictures would serve to illustrate and explain the testimony and would aid the jury in understanding the testimony and in comprehending the questions in dispute. What evidentiary weight was to be given

them was for the jury. *Spence, Adm'x, v. Rasmussen et al*, 190 Or 662, 226 P2d 819 (1951).

■ The question of whether photographs of the scene of an accident, although taken some hours after the accident, are sufficiently correct representations of the conditions as they existed at that time is a preliminary question of fact for the trial court. *State v. Miller*, 43 Or 325, 328, 74 P 658 (1903); 9 ALR2d 915. It has been held that the fact that such a photograph may have been taken some time after an occurrence does not require its exclusion, even in the absence of direct testimony that conditions remained the same during the interval. *Commonwealth v. Ware*, 279 Pa 282, 123 A 795 (1924). *See also Mason v. Allen et al*, 183 Or 638, 641-42, 195 P2d 717 (1948), 9 ALR2d 926-29, and cases cited in 3 Wigmore, Evidence (3d ed) § 792, n 1. In any event, any error resulting from the absence of direct testimony that conditions remained substantially the same when the photographs were taken eight hours after the accident in this case does not require reversal of a jury verdict, in the absence of some showing of prejudice. There was no such showing under the facts of this case. *See Mason v. Allen et al, supra* at 642. *See also Pond v. Jantzen Knitting Mills*, 183 Or 255, 266, 190 P2d 141 (1948).

■ The defendant alleges two further errors in the sustaining of the plaintiff's objection to testimony as to the location of dirt and debris on the street.

"Q.: That night? Can you tell the jury from your observation there that night which side of the road it appeared to be on?

"MR. HOLLEN: Well, I think he has already testified.

"MR. ENFIELD: He had gone into it at length in the cross examination.

"THE COURT: I think I will sustain the objection.

"* * * * *.

"Q: Which side of the road was it the right lane or the left lane of Mr. Eshelman this dirt and debris was found from the other side of the car?

"MR. HOLLEN: Objection, this assumes that it was from the other side of the car.

"MR. ENFIELD: Well that is the way it has been described earlier.

"THE COURT: Based on opinion I will sustain the objection to [sic] that he can tell—find it like he did before.

"* * * * *.

"Q: You did find something in the road here didn't you that you measured from is that right?

"A: Yes, sir.

"Q: What lane was that in?

"MR. HOLLEN: Objection, Your Honor.

"THE COURT: * * * I will sustain the objection."

The questions were directed to the lane of travel in which the pile of dirt and debris was located. The witness had previously been permitted to testify fully to the effect that the debris was on the defendant's side of the road.[1] It was not error to exclude the evidence.

---

[1]
"Q: Was there any particular place on the roadway where there was dirt such as would come off the bottom of an automobile?
"A: Yes, sir.
"* * * * *.
"Q: What side of the road was it on?
"A: It was on the right-hand side of the road.
"* * * * *.
"Q: Would it be on Mr. Eshelman's side of the road?
"A: Yes sir."

■ The defendant alleges that the court committed further error in allowing the plaintiff's father to testify over defendant's objection to the distance between a power pole and the center of Fogarty Street. The accident occurred on July 16, 1966. The measuring was done on September 11, 1968. The plaintiff's father testified that the road was the same as nearly as he could see. Under these circumstances, it was not error to admit the testimony.

We find no substantial error. The judgment is affirmed.