Argued October 8, affirmed October 24, 1974

CARLSON, *Respondent, v.* THE MAY
DEPARTMENT STORES COMPANY, *Appellant.*
527 P2d 252

*Richard A. Roseta,* Eugene, argued the cause for
appellant. On the briefs were William G. Wheatley
and John E. Jaqua, Eugene.

*Darst B. Atherly,* Eugene, argued the cause and filed a brief for respondent.

Before O'CONNELL, Chief Justice, and McALLISTER, TONGUE, HOWELL, SLOPER and LEAVY, Justices.

SLOPER, J. (Pro Tempore)

This is an action for personal injuries brought by plaintiff for an injury to his right foot allegedly occurring while trying on a pair of shoes in defendant's store. Trial was had before the court upon a waiver of a jury and defendant appeals from a judgment in favor of plaintiff.

Defendant's sole assignment of error is that plaintiff's proof and the court's findings are legally insufficient to support the judgment. Under our previous decisions, the scope of our review in this case is limited to a determination of whether the trial judge's decision is supported by any competent substantial evidence. It is not our function to pass on the credibility of witnesses or to weigh the evidence, and on appeal we must view the evidence in the light most favorable to plaintiff. See *Sexton v. Kelly,* 185 Or 1, 12, 200 P2d 950 (1948); *Cronn v. Fisher,* 245 Or 407, 416, 422 P2d 276 (1966); *Anaheim Co. v. Holcombe,* 246 Or 541, 548, 426 P2d 743 (1967); and *Boyce v. Standard Investment Co.,* 263 Or 82, 84, 501 P2d 65 (1972). We must, therefore, examine the evidence to determine its sufficiency, to withstand defendant's attack, by the standards previously referred to.

Plaintiff, in company with his wife and son, visited defendant's store to purchase a pair of shoes for the son. While plaintiff's son was being fitted for a pair of shoes, plaintiff discovered a pair of

shoes that he wished to try on. Plaintiff and his wife seated themselves and asked the clerk for a shoe in plaintiff's size. The clerk returned with several pairs of shoes and proceeded to put one on plaintiff's right foot. The clerk had been working in the shoe store for about one month. As the clerk was attempting to assist plaintiff in putting plaintiff's right foot into the shoe, plaintiff experienced intense pain, jumped up out of the chair in which he had been sitting and exclaimed, "You really got me," and then the clerk asked if he should help put on the other shoe and plaintiff declined and said, "Oh, no. I'll put the other one on myself." The clerk when using a shoehorn used a metal shoehorn with a lip at the top and testified that the lip hooks over the forefinger of the right hand and that the bottom of the shoehorn rests loosely in the shoe and that the shoehorn is not otherwise guided or braced. The clerk has no recollection of the incident described by plaintiff, although he acknowledges that he, in fact, sold the shoes in question to plaintiff. The shoes were of a soft suede type. Until the occurrence described by plaintiff on March 15, 1971, plaintiff had been a physically active person and had no prior pain or difficulty with his right heel. Since the time of the occurrence plaintiff has experienced pain in his right heel of a sufficient severity that he has been forced to curtail to a substantial degree his normal activities. Three associates of plaintiff, including his orthopedic surgeon, corroborated his continuing difficulties, having on various occasions personally observed outward manifestations of physical pain associated with his right heel. Plaintiff's medical expert diagnosed plaintiff's condition to be one of chronic degenerative tendonitis with calcification and testified that in his opinion and to a reasonable med-

ical certainty the injury was caused by the incident with the shoehorn and that it is probable that in the future plaintiff's condition will require corrective surgery.

■■ While there was no eyewitness testimony of the precise manner of the manipulation of the shoehorn by the clerk, plaintiff using his sense of feel could certainly feel the shoehorn as it came into contact with his foot. It is well settled that negligence and causation may be proven by circumstantial evidence. *Ehler v. Portland Gas & Coke Co.*, 223 Or 28, 38, 352 P2d 1102, 1106, 353 P2d 864 (1960). This rule, however, is subject to certain limitations; one limitation being that the evidence must be such that there is a rational basis for concluding that it was more probable than not that defendant's negligence caused plaintiff's injury. *Kaufman v. Fisher*, 230 Or 626, 636, 371 P2d 948 (1962). It is not necessary for plaintiff to eliminate all other possible causes of plaintiff's injuries to make a jury question. *Eitel v. Times, Inc.*, 221 Or 585, 596, 352 P2d 485, 5 ALR3d 86 (1960). Professor Prosser, who is quoted in several of our decisions, expresses the proposition as follows:

"* * * What is required is evidence from which reasonable men may conclude that, upon the whole, it is more likely that there was negligence than that there was not. Where the conclusion is a matter of mere speculation or conjecture, or where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct the jury that the burden of proof has not been sustained." Prosser, Torts (2d ed) 200, § 42.

■ Our most careful examination and consideration of the evidence before us and of the prior decisions of this court, convinces us that plaintiff's evidence was

sufficient to permit the trial judge to find that it was more probable than not that defendant's negligence was the cause of plaintiff's injury.

The case is affirmed.