Argued and submitted January 29, affirmed October 7, 1992

August J. REISEN,
by and through Phillippe A. Stoner,
Personal Representative of the Estate of
August J. Reisen, Deceased,
*Appellant,*

*v.*

BLUE CROSS BLUE SHIELD
OF OREGON,
an Oregon corporation,
*Respondent.*

(A9004-02480; CA A66211)

839 P2d 729

Jan K. Kitchel, Portland, argued the cause for appellant. With him on the briefs was Schwabe, Williamson & Wyatt, Portland.

I. Franklin Hunsaker, Portland, argued the cause for respondent. With him on the brief were Chrys A. Martin and Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

Riggs, J., dissenting.

## EDMONDS, J.

In this action to recover benefits under a health insurance policy, plaintiff appeals from a judgment on a directed verdict for defendant insurer. ORCP 60. Plaintiff contends that the materiality of plaintiff's decedent's representations in his insurance application was a question of fact for the jury. A directed verdict is proper only if reasonable people could draw but one conclusion from the evidence. *James v. Carnation Co.*, 278 Or 65, 69, 562 P2d 1192 (1977). In reviewing the directed verdict, we view the evidence in the light most favorable to the non-moving party as to whether the representations were material. *City of Rogue River v. DeBoer*, 288 Or 485, 488, 605 P2d 697 (1980). We affirm.

In June, 1989, decedent applied for, and was issued, a health insurance policy by defendant. The application provided that, if it contained material or fraudulent misstatements or omissions, defendant was entitled to rescind the contract. In response to specific questions on his application, decedent said that he had not had any medical conditions or treatments and had not taken any medication in the past five years.[1] After decedent became ill in the summer and fall of 1989, he sought benefits under defendant's policy. Defendant reviewed hospital records and rescinded the policy.

At trial, defendant offered evidence that decedent had failed to disclose:

(1) A 1984 auto accident, within the 5 year period, resulting in a back injury for which decedent received medical

---

[1] Decedent had answered "no" to these questions:

"47. Has any person listed on the application consulted or received advice or medical testing from a physician or other health professional in the last 5 years that isn't mentioned above? * * * If yes, please give the persons's name, nature of consultation/advice and/or results, including date(s), full name and address of physician.

"48. Has any person listed on the application had a condition (as defined above) in the last five years for which there has been no treatment or medical consultation? * * * If yes, indicate which person and for what condition.

"50. Has any person listed on the application taken medication in the last five years? * * * If yes, indicate which person and for what condition.

"53. Have you had chronic cough, significant weight loss, chronic fatigue, diarrhea or enlarged glands within the past 12 months?

"55. Have you tested positive on any HIV antibody test?"

treatment and physical therapy, including 18 physician visits and 14 physical therapy treatments.

(2) Emergency and follow-up treatment for herpes zoster in 1985.

(3) Treatment in 1985 to remove a growth on his face.

(4) Emergency treatment in 1986 for an accident that injured his hand and back and chiropractic treatments for the back injury.

(5) Treatment and medication in January, 1989, for what decedent described as a dandruff problem, which was diagnosed as seborrheic dermatitis.

(6) Treatment and medication in January, 1989, for an oral yeast infection known as monilial glossitis.

(7) A hospital record dated September 31, 1989, showing that decedent had said that he had had a questionable positive HIV test in January, 1989.

(8) A hospital record dated September 31, 1989, showing that decedent had said that he had had a chronic cough since January, 1989.

Decedent's evidence indicated that the first six conditions were minor and that he had fully recovered from them and had experienced no recurring problems. He testified that, in July, 1989, he had received two emergency treatments and one follow-up visit for a cough that he had had for approximately one month. He was diagnosed as having bronchitis. In late August, 1989, he became very ill and was treated for pneumonia, but the treatment was unsuccessful. He became concerned that he was suffering from AIDS-related pneumonia. In September, 1989, he went to a Portland hospital and told a doctor that he had had a questionable positive HIV test. He testified that he gave the report about the HIV test, which was false, because his friends had advised him that he needed immediate therapy and testing would require too much delay. A medical report from that hospital says that decedent said that he had been tested for HIV in January, 1989, and had had a chronic cough since January, 1989.

The failure to disclose information to an insurer by a prospective insured may prevent recovery of insurance benefits if the information was "material." ORS 742.013(1).[2] The issue is whether decedent's representations in his application for insurance were material, as a matter of law, to acceptance of the risk by defendant. Plaintiff argues that decedent's AIDS condition had not been treated or diagnosed and there were no "direct symptoms" of AIDS before he applied for insurance. Plaintiff says that, "[a]lthough [decedent] had some past medical problems, unrelated to AIDS, that were omitted from the application, the materiality of those omissions is a question of fact [for the jury]."

Relying on *Knight v. Continental Casualty*, 259 Or 46, 485 P2d 403 (1971), defendant argues that decedent's misrepresentations were material as a matter of law.[3] If decedent had disclosed the omitted information, defendant argues that it would not have insured him or would have issued a more restrictive policy. In *Knight*, the defendant insurer refused to pay the plaintiff benefits under its policy for an injury to her *back* because of her misrepresentations on the insurance application. The application asked whether the plaintiff had ever been treated medically for any ulcer of the

---

[2] ORS 742.013(1) provides:

"All statements and descriptions in any application for an insurance policy by or in behalf of the insured, shall be deemed to be representations and not warranties. Misrepresentations, omissions, concealments of fact and incorrect statements shall not prevent a recovery under the policy unless the misrepresentations, omissions, concealments of fact and incorrect statements:

"(a) Are contained in a written application for the insurance policy, and a copy of the application is indorsed upon or attached to the insurance policy when issued;

"(b) Are shown by the insurer to be material, and the insurer also shows reliance thereon; and

"(c) Are either:

"(A) Fraudulent; or

"(B) Material either to the acceptance of the risk or to the hazard assumed by the insurer."

[3] The dissent also says that the majority "mischaracterizes the law" by omitting a quotation from *Knight v. Continental Casualty, supra*, 259 Or at 51. 115 Or App at 406. That quotation refers to general principles used in determining whether uncontradicted evidence suffices to take a case from the jury. *See Wiebe v. Seely, Administrator*, 215 Or 331, 343-44, 335 P2d 379 (1959). Those general principles were applied in *Knight* to decide that, as a matter of law, the plaintiff's misrepresentations were material.

stomach or intestines, whether she had had any medical treatment in the last five years and whether she had suffered from any other physical impairment. The plaintiff answered, "No." The evidence showed that she had been treated by a doctor for an ulcerous condition for about six months during the pertinent time.

■    The court noted the testimony of the defendant's underwriter, who said that any disorder of the stomach or the duodenum would have resulted in qualifying endorsements to the policy. It held:

> "We are of the opinion that the evidence in the present case requires a ruling that the answers were material as a matter of law. It is common knowledge that an insurance company will not issue a policy of insurance or will issue only a qualified policy if the company knows that the applicant has certain serious symptoms relevant to the type of coverage offered under the policy. * * * Some of the variations [in the degree of the seriousness of the applicant's affliction] will be such that the court, drawing upon its knowledge of business practice, would be entitled to rule as a matter of law that the failure to reveal information in response to the question in the application is or is not material. When the court does not have such knowledge, the insurer must adduce evidence to establish the fact and the claimant may rebut it with other evidence.

> "In the present case *[the insurer] presented evidence on the issue of materiality, but plaintiff did not.* The question is whether, under these circumstances, the issue of materiality should be submitted to the jury. We hold that it is not a jury question in this case.

> "* * * * *

> "*And the misrepresentation was material even though it did not relate to the injury for which the claim is made in this case.* * * * If plaintiff had digestive difficulties and they were disclosed by her response to the questions in the application, defendant would have issued the policy only with qualifying endorsements thus protecting itself against the risk of loss resulting from plaintiff's digestive problems. If plaintiff misrepresented her condition, defendant would be subjected to the risk that the misrepresentation might go undetected and claims relating to plaintiff's digestive tract might be paid." 259 Or at 50. (Citation omitted; emphasis supplied.)

Under ORS 742.013(1) and *Knight*, a misrepresentation can be material, even if it is not related to the condition for which a claim is made. 259 Or at 51. Even if disclosure of the ulcer would have resulted only in a qualifying endorsement, that nondisclosure was material to the insurer's acceptance of the risk and the insurer was entitled to deny benefits for the plaintiff's back injury.

■ We turn to the evidence in this case in the light of the holding in *Knight*. Plaintiff argues that, because another insurer in California had insured him in 1988 without restriction, that evidence creates an issue of fact as to whether defendant would have insured him in June, 1989. The issue is whether defendant would have insured decedent at the time he applied, *not* whether defendant would have insured him in 1988. Regarding decedent's back condition, it is uncontroverted that decedent did not report to defendant that he had been treated for previous back injuries in 1984 and 1986. When defendant's underwriter was asked what she would have done if decedent had disclosed those treatments, she said, "I would have had to exclude the back condition." An underwriter for another company testified: "We would have excluded care for the back, the spine, and any of the muscles and the nerve roots associated with that." The evidence is uncontroverted that decedent's misrepresentations as to his back condition were material as a matter of law.

■ Moreover, treatment for two of the conditions that decedent did not report on his application, seborrheic dermatitis and monilial glossitis, occurred *after* his insurance with the California insurer had terminated. The uncontradicted testimony demonstrates that disclosure of either condition would have resulted in exclusion of the condition. The dissent says that the testimony is not uncontradicted, because the witness used the words "possibly" and "probably." We quote defendant's underwriter's testimony in context regarding those two conditions:

"Q What would you have done with that information, in Dr. Kennedy's records [regarding monilial glossitis and seborrheic dermatitis]?

"A I think it's quite possible he would not have been accepted.

"Q Why?

"A   The monilial glossitis or the oral yeast infection is a positive or a very suggestive symptom of decreased immunity, and I think I would have liked to defer this individual for coverage.

"Q   Would you have done anything with the diagnosis of seborrheic dermatitis?

"A   Probably excluded that, if the person had been accepted.

"Q   Was — in Mr. Reisen's case, was that just a simple case of dandruff?

"A   Not in my opinion, no.

"Q   Why?

"A   Dandruff is a common term — ordinary person's term for flakes in their hair. When you have skin excoriation or the breakdown of skin and sores, it is beyond straight dandruff. You have a skin problem.

"Q   And did you have any information as to whether that skin problem had been existing for sometime?

"A   Yes. According to the record, it had, both — there was indication of medications being taken prior to this visit with Dr. Kennedy, as well as indications of further refills of medications afterwards.

"Q   What would you have done with that information if you had it on the application?

"A   Uh, I would have excluded it."

On cross-examination, she testified:

"Q   Okay. Now, as a result of the skin condition you said that — as to the seborrheic dermatitis —

"A   Uh-huh?

"Q   — that would also be excluded; is that right?

"A   That's correct."

Regarding those two conditions, an underwriter for another insurer testified that her company would have "ridered" the dermatitis condition and would have wanted follow-up information on the monilial glossitis.[4]

---

[4] The underwriter for another insurer testified:

"Q Have you reviewed his records from his visits with Dr. Kennedy in January of 1989, where he was treated for seborrheic dermatitis and monilial cystitis?

Furthermore, defendant's underwriter was unequivocal in her testimony that the *combination* of decedent's other unreported conditions would have resulted in exclusion of the conditions or rejection of the application:

"Q    Now, we've talked about each one of these symptoms individually. What — if all of this had been listed on the application — what, if anything, would Blue Cross have done with the application?

"A    I do not believe the person would have been accepted.

"Q    And why not?

"A    A combination of things. As I say, particularly when you put together the herpes zoster with the monilial glossitis, you've got two instances of evidence of suppressed immunity. Plus, you would also have had to have exclusions on the other conditions as well, to make them acceptable."[5]

---

"A    Yes.

"Q    What would you have done if those two conditions had been listed on the —

"A    On the dermatitis, we would have ridered the condition.

"Q    Why?

"A    Because of the time, being as it was recent — as recent as it was to the application.

"Q    How long would you have put a rider on that for?

"A    People who have riders on their policy can apply to us to have those reviewed in two years. And what we want to know is from a — we want a physician to tell us whether or not it was still present. So we do need follow-up care to show that the condition resolved.

"Q    And what would you have done with the monilial glossitis condition?

"A    We would want follow-up with the physician to know how it resolved.

"Q    And what if the person hadn't had any follow-up? What would you do?

"A    Postpone the applicant.

"* * * * *

"Q    By postpone, you mean asking him to go see a doctor?

"A    Postpone means we in essence decline the applicant. But it's up to the applicant to clarify with the physician or to seek follow-up care."

[5] Defendant's underwriter also testified:

"Q    If there was no positive HIV test and no cough, so all you had was the back conditions and the skin conditions and the monilial glossitis, and you found that out now — none of it was revealed on the application, but revealed after the fact — what would you do?

"A    I would still rescind the coverage."

The underwriter for another carrier testified that she would have "postponed" the application on the basis of the herpes zoster and the facial growth, pending further investigation.[6] Decedent did not offer any expert testimony to contradict either witness.

The trial court properly granted defendant's motion for a directed verdict on the basis that decedent's misrepresentations were material as a matter of law for either of two reasons. The evidence is uncontroverted that, had defendant been aware of decedent's back condition, it would have considered that condition material and would have excluded it. Under *Knight*, it was entitled to rescind the policy and deny all benefits on the basis of the nondisclosure of the back treatments. Second, the uncontradicted testimony shows that disclosure of either dermatitis or monilial glossitis conditions in combination with decedent's other unreported conditions that occurred before June, 1989, would have resulted in exclusion of those conditions or rejection of the application.

Affirmed.

---

[6] She testified:

"Q Have you had an opportunity to review Mr. Reisen's medical claims for treatment to his back in 1985 and '86?

"A Yes, I did.

"Q If Mr. Reisen had applied for health insurance with your company and had listed those visits to a doctor and that particular diagnosis, what would you have done?

"A We would have excluded care for the back, the spine, and any of the muscles and the nerve roots associated with that.

"Q Why?

"A Because the amount of care that he had would indicate to us that the possibility of recurrence would be there.

"Q Have you also reviewed his medical records which indicate that in 1985 he was treated for herpes zoster, and for — had a growth removed from his face?

"A Yes.

"Q Would you have done anything with the report on those two conditions?

"A We would have been concerned and would have wanted to have follow-up care. We'd want to know if either of those conditions either recurred or were they still — were they resolved.

"Q Would you actually send him back to a doctor if he hadn't seen one?

"A No. We would postpone and leave that up to him to determine — him or her — to determine what they wanted to do about it."

**RIGGS, J.,** dissenting.

The majority has taken liberties with both the facts and the law in this case.

It is fundamental that, on review of a directed verdict, we must view the evidence in the light *most favorable to the party against whom the verdict was directed*, in this case, *plaintiff. Maine Bonding v. Centennial Ins. Co.*, 298 Or 514, 523, 693 P2d 1296 (1985). The majority, although it pays the slightest lip service to the rule, states and views the facts in the light most favorable to defendant. That is not only inappropriate, it is just plain wrong. The issue of materiality should have gone to the jury, and I would hold that the trial court erred in directing a verdict.

The majority states that plaintiff's decedent failed to disclose certain conditions on the health insurance application, including a medical report indicating that decedent had taken an HIV test in January, 1989, and had had a chronic cough since January, 1989. The report, made in September, 1989, was not in existence on June 5, 1989, when decedent applied for insurance, and should not be included in the list of omissions. Further, plaintiff presented substantial evidence that decedent did not suffer either of the conditions indicated in the report when he applied for health insurance in June, 1989. Whether decedent had a chronic cough or had tested positive for HIV *before* applying for health insurance was purely an issue of fact for the jury and, viewed in the light most favorable to plaintiff, a reasonable juror could conclude that *neither* condition existed when he applied for health insurance.

The majority also mischaracterizes the law, omitting from its quotation of *Knight v. Continental Casualty*, 259 Or 46, 485 P2d 403 (1971), the controlling standard by which we must determine whether the question of materiality should be submitted to the jury when the insurer has presented evidence on the issue, but the insured has not. The court in *Knight* did *not* say that the issue of materiality could be decided as a matter of law, regardless of the quality of the insurer's proof or the presence of rebutting proof. It said that that aspect of the case was controlled by this principle:

" '[W]hen the testimony of witnesses, interested in the event or otherwise, is *clear and convincing*, not incredible in the

light of general knowledge and common experience, not extraordinary, *not contradicted* in any way by witnesses or circumstances, and *so plain and complete* that disbelief of the story could not reasonably arise in the rational process of an ordinary intelligent mind, then a question has been presented for the court to decide and not the jury.' " 259 Or at 51 (quoting *Rickard v. Ellis*, 230 Or 46, 51, 368 P2d 396 (1962)). (Emphasis supplied.)

Only because the evidence in that case satisfied *all* of the elements of the rule did the court decide that materiality was a question for the court and not for the jury. 259 Or at 51. The majority ignores the rule actually stated in *Knight*, with the consequence that *any* testimony by the insurance company, regardless of its weight or value, becomes sufficient to direct a verdict against plaintiff.

Contrary to the majority's determination that "[t]he evidence is uncontroverted that decedent's misrepresentations as to his back condition were material as a matter of law," 115 Or App at 402, defendant provided controverting evidence that another insurer (Blue Cross of California) had previously insured him without any restriction for his back condition. In the light of that evidence, a jury would be entitled to disbelieve testimony that defendant would have excluded decedent's back condition, which had continued to be trouble free. If anything, an insurer would have been *less* likely to exclude such a condition at the time of application than at the time the previous insurer had accepted the condition. Contrary to the majority's ultimate determination that the "uncontradicted testimony shows that disclosure of either dermatitis or monilial glossitis conditions in combination with decedent's other unreported conditions that occurred before June, 1989, would have resulted in exclusion of those conditions or rejection of the application," 115 Or App at 405, that testimony is *not* conclusive. The testimony that defendant would have rejected the application for those conditions in *combination* included consideration of the HIV test and chronic cough conditions, both of which a jury could find did not exist at the time of application.

In sum, the testimony in this case does not meet the standard in *Knight*. It was *not* uncontradicted, *not* clear and convincing, *not* so plain and complete that disbelief of the

story could not reasonably arise in the rational process of an ordinary intelligent mind. In the light of general knowledge and common experience, and especially in the light of defendant's witness's testimony that she would *not* have rejected the application because of shingles or the removal of a facial growth, a fact finder *could* consider it incredible that an insurance company would reject an applicant because of those conditions. A reasonable jury *could* find it unbelievable that this insurer would reject or exclude decedent's back condition, when an earlier insurer had accepted it. A reasonable jury *could* have found that decedent did *not* test positive for HIV or have a chronic cough and that defendant would *not* have considered decedent's other conditions material *at the time he applied for health insurance.* The issues of fact, including the issue of materiality, should have been left for the jury to decide. I would hold that the trial court erred in ordering a directed verdict. The majority is wrong in holding otherwise.

I dissent.